E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
BENJAMIN R. BARRON
Assistant United States Attorney
Chief, Santa Ana Branch Office
BRADLEY E. MARRETT (Cal. Bar No. 288079)
MELISSA S. RABBANI (Cal. Bar No. 283993)
Assistant United States Attorneys
     U.S. ATTORNEY'S OFFICE
     411 West Fourth Street, Suite 8000
     Santa Ana, California 92701
     Telephone: (714) 338-3500
     Facsimile: (714) 338-3561
     E-mail:    bradley.marrett@usdoj.gov
                melissa.rabbani@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>             v.<br><br>SEAN ROBERT MCLAUGHLIN,<br><br>             Defendant. | No. SA CR 21-85-DOC<br><br>GOVERNMENT'S SENTENCING POSITION<br><br>Hearing Date:   April 3, 2023<br>Hearing Time:   1:00 p.m. |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Bradley E. Marrett and Melissa S. Rabbani, hereby files its sentencing position for defendant Sean Robert McLaughlin.

The government's sentencing position is based upon the attached memorandum of points and authorities, the files and records in this

case, the Presentence Report and disclosed recommendation letter filed on February 27, 2023, and such further evidence and argument as the Court may wish to consider at the time of sentencing.

Dated: March 27, 2023                    Respectfully submitted,

                                         E. MARTIN ESTRADA
                                         United States Attorney

                                         MACK E. JENKINS
                                         Assistant United States Attorney
                                         Chief, Criminal Division


                                         /s/ *Melissa S. Rabbani*
                                         BRADLEY E. MARRETT
                                         MELISSA S. RABBANI
                                         Assistant United States Attorneys

                                         Attorneys for Plaintiff
                                         UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

On July 6, 2022, defendant Sean Robert McLaughlin ("defendant") was charged in a first superseding indictment with one count of distribution of furanyl fentanyl resulting in serious bodily injury or death, one count of distribution of cocaine, and four counts of possession with intent to distribute controlled substances, including cocaine, methamphetamine, MDMA, and hydrocodone.  Dkt. 28.

Following a seven-day jury trial in October, defendant was acquitted of the furanyl fentanyl count but convicted of the five remaining counts.  Dkt. 61.

The United States Probation Office ("USPO") filed a Presentence Report and disclosed recommendation letter on February 27, 2023. Dkts. 70, 71.  In its report, the USPO determined that the total applicable offense level in this case is 14 and that defendant's criminal history is in category I, resulting in a guidelines range of 15 to 21 months.  Dkt. 71 at 4.  The USPO recommends that the Court sentence defendant to 15 months' custody, followed by a three-year period of supervised release.  Dkt. 70.

The government agrees with the USPO's calculation as to the applicable Guidelines range.  However, given the nature and circumstances of defendant's offense, the government believes that a high-end sentence of 21 months' custody is appropriate.

**II.  SUMMARY OF RELEVANT FACTS**

In November 2016, defendant was employed as a security manager at the American Junkie bar in Newport Beach, California.  Shortly after midnight on November 18, 2016, while defendant was at the bar and working, three customers at the American Junkie – Ahmed Said,

1   Daron Muratyan, and Josh Selley – lost consciousness and collapsed.
2       All three were revived by paramedics and hospitalized.
3   Tragically, Mr. Said died later that morning, while Mr. Muratyan and
4   Mr. Selley both survived.  Toxicological analyses conducted on Mr.
5   Said's, Mr. Selley's, and Mr. Muratyan's blood determined that each
6   of them had ingested furanyl fentanyl, a powerful analogue of
7   fentanyl, and Mr. Said's autopsy report concluded that his cause of
8   death was acute furanyl fentanyl intoxication.
9       Newport Beach officers interviewed both Mr. Selley and Mr.
10  Muratyan on the day of the overdoses.  Both confirmed that they had
11  collapsed after ingesting what they believed was cocaine in the
12  bathroom at the American Junkie.  And both identified defendant Sean
13  McLaughlin as the person who had provided them that cocaine.
14      Surveillance video from the bar lined up with those accounts, as
15  it showed Mr. Selley and Mr. Muratyan speaking with defendant when
16  they arrived at the bar and, eventually, going into the men's
17  bathroom while defendant was there.
18      That same day, Newport Beach officers conducted a search of the
19  American Junkie and defendant's home and car.  Inside lockers in the
20  employee locker room, officers found several baggies and vials
21  containing various controlled substances.  Later testing determined
22  that the substances contained cocaine, methamphetamine, MDMA, and
23  hydrocodone.  Additional hydrocodone, as well as several thousand
24  dollars in cash, were found during the search of defendant's home and
25  car.
26      In the weeks following the overdose deaths at the American
27  Junkie, which were widely publicized in local news, a woman named
28  Marta Massoodnia contacted Newport Beach police and reported that in

or around September of that year, defendant had distributed a small envelope of narcotics to her while she was at the bar with friends. Ms. Massoodnia told police that she did not use drugs, did not want the drugs the defendant gave her, and had kept the envelope at her home. At officers' request, Ms. Massoodnia brought the envelope to police. Testing on the substance in the envelope showed that it contained cocaine.

DNA samples taken from the envelope provided by Ms. Massoodnia, as well as one of the narcotics containers, matched defendant's. In addition, text and other messages taken from defendant's phone showed that he was selling drugs, including cocaine, in the weeks and months leading up to the overdoses – and that he was doing so at the American Junkie.

All of the facts and evidence detailed above were presented at trial. In addition, Mr. Selley and Mr. Muratyan testified before the jury and confirmed that they had done what they believed was cocaine in the bathroom at the American Junkie shortly before losing consciousness. Both Mr. Selley and Mr. Muratyan also confirmed that it was defendant who had provided them that cocaine.

Ms. Massoodnia also testified at length about her encounters at the American Junkie with defendant, explaining that he often made her uncomfortable, that she believed he was making sexual advances towards her, and that he had provided her drugs and pressured her to do them.

**III. THE PRESENTENCE REPORT**

Based on the quantity of narcotics defendant distributed and possessed, the USPO determined defendant's base offense level to be 14. Dkt. 71 at 11-12. The USPO then considered whether defendant

3

qualified for a two-level reduction based on the "safety valve" described in U.S.S.G. § 5C1.2, and ultimately concluded that defendant did not qualify for the reduction because his offense conduct resulted in the death of Ahmed Said. Dkt. 71 at 13. The USPO also found that defendant did not qualify for a three-level reduction for acceptance of responsibility.

Finally, the USPO determined that defendant's total criminal history score for this offense is zero, resulting in a criminal history category of I and a guidelines range of 15 to 21 months' imprisonment. Dkt. 27 at 13-15, 28.

The USPO recommends that the Court sentence defendant at the low end of that Guidelines range: 15 months' custody, followed by a three-year period of supervised release.

**IV.  THE DEFENSE'S POSITION**

Defendant raises two major issues with the PSR.

First, defendant claims that paragraph 34 of the PSR is inaccurate and that defendant did not, in fact, tell the probation officer interviewing him for the PSR that "he did not know the substance he provided to the victims in this contained fentanyl analogue" and that he "thought he was providing cocaine to them." See Dkt. 71 at 10; Dkt. 72 at 2. The government was not present at the interview and takes no position on what was or was not said, but notes that the statements reported in the PSR are certainly consistent with the evidence in this case.

Second, defendant argues that he is, in fact, entitled to a two-level reduction under U.S.S.G. § 5C1.2 because he meets all five "safety valve" requirements. Thus, defendant argues, the correct offense level is 12, which when combined with a criminal history of

4

score of zero, results in a Guidelines range of 10 to 16 months' custody.

Based on those arguments, and a number of mitigating circumstances including the defendant's health issues, defendant requests that the Court impose a sentence of probation, home detention, or, if the Court is not amenable to probation or home detention, a sentence of 12 months' custody.

## V.  THE GOVERNMENT'S POSITION

The government concurs with the USPO's calculations as to the applicable Guidelines range.  In particular, the government agrees that defendant does not qualify for a two-level reduction under U.S.S.G. § 5C1.2.  While defendant was acquitted of the distribution count involving the death of Ahmed Said, Section 5C1.2 requires among other things that "not later than the time of the sentencing hearing," the defendant "truthfully provide[s] to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan."  U.S.S.G. § 5C1.2(a)(5).  Defendant has not provided any such information to the government.

And while the USPO recommends that the Court impose a sentence at the low end of the applicable Guidelines range, the government believes that a sentence at the high end of that range – 21 months' custody - is appropriate for several reasons.

At the time of the offenses in this case, defendant was 42 years old.  He was employed as the security manager at the American Junkie: charged with ensuring that the bar's customers, many of them much younger and under the influence of at least alcohol, were safe.

Defendant not only ignored his responsibilities as security

5

manager, but took advantage of that position to run a more profitable side hustle for himself: selling cocaine, Adderall, and other drugs to the bar's customers. Defendant's conduct was reckless and endangered the wellbeing of everyone at the bar – and there is ample evidence in this case that defendant's conduct led to three overdoses and one death. Moreover, defendant has yet to fully accept responsibility for his actions.

While defendant does appear to suffer from a number of health problems, the Bureau of Prisons regularly accepts and cares for inmates with similar and worse health concerns.[1] Defendant has not established, or suggested, that the BOP is unable to provide him with adequate medical care.

Thus, for the reasons above, the government respectfully recommends that the Court impose a sentence at the high end of the applicable Guidelines range: (a) 21 months' custody; (b) a three-year period of supervised release; and (c) a special assessment of $500. The government believes this sentence is sufficient, but not greater than necessary, to achieve the goals of sentencing set forth in 18 U.S.C. § 3553(a).

In particular, the government respectfully submits that a 21-month sentence will appropriately reflect the seriousness of this offense and promote respect for the law, deter future criminal conduct from both the defendant and others without imposing greater punishment than necessary, and serve to protect the community from

---

[1] As the Court may remember, the Court was able to speak with one of defendant's physicians at the start of trial. Defendant's physician explained that defendant's respiratory limitations were critical and worsening, but stated he did not believe that defendant was at imminent risk of losing his life.

further crime, while minimizing sentencing disparities among similarly situated defendants.

**VI.  FINE**

The USPO determined that defendant does not have the ability to pay a fine at the time of sentencing.  Dkt. 70 at 1.  The government concurs with the USPO's conclusion and recommends that no fine be imposed.

**VII. CONCLUSION**

As set forth above, a sentence of 21 months' custody is sufficient, but not greater than necessary, to punish defendant, promote respect for the law, deter defendant from committing similar crimes in the future, and avoid sentencing disparities.  See generally 18 U.S.C. § 3553(a).